DICONZA TAURIG KADISH LLP  
630 Third Avenue  
New York, New York 10017  
Tel: (212) 682-4940  
Allen G. Kadish  
Jeffrey Traurig  
Email: akadish@dtklawgroup.com  
       jtraurig@dtklawgroup.com  

Hearing Date: May 4, 2017  
Hearing Time: 10:00 a.m.

*Counsel for Robert L. Geltzer,*  
*Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
---------------------------------------------------------------x

In re:                                                                         Chapter 7

RSSM CPA LLP,                             Case No. 17-10375 (MEW)

                Debtor.

---------------------------------------------------------------x

**RESPONSE OF ROBERT L. GELTZER,**  
**CHAPTER 7 TRUSTEE, IN OPPOSITION TO MOTION OF**  
**BC COMPLIANCE GROUP, LLC, FOR RELIEF FROM STAY**

TO THE HONORABLE MICHAEL E. WILES,  
UNITED STATES BANKRUPTCY JUDGE:

      ROBERT L. GELTZER, as chapter 7 trustee (the "**Trustee**") of the estate of RSSM CPA LLP, debtor (the "**Debtor**"), by and through his undersigned counsel, respectfully responds to the motion, dated March 15, 2017 [Docket No. 5] (the "**Motion**"), of BC Compliance Group, LLC ("**BCCG**"), for an Order granting relief from the automatic stay to allow BCCG to (a) continue with an action pending before the Superior Court of New Jersey, Appellate Division (the "**BCCG Appeal**"), and (b) authorizing BCCG to draw upon a supersedeas bond if the Appellate Division affirms the orders denying summary judgment to the Debtor, and in respect whereof respectfully sets forth as follows.

## BACKGROUND

1. The Debtor filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code (the "**Bankruptcy Code**") on February 22, 2017 (the "**Petition Date**").

2. The Trustee was appointed as the interim chapter 7 trustee of the Debtor, has accepted his appointment, duly qualified and is acting in his capacity as Trustee.

3. Before the Petition Date, the Debtor was a limited liability partnership that was principally engaged in the business of providing accounting services to clients in the New York City Area.

4. Upon information and belief, approximately a year before the Petition Date, the Debtor ceased operations as an accounting firm.

5. On the Petition Date, and together with its petition, the Debtor filed its schedules and statement of financial affairs. The Debtor scheduled Sterling National Bank (the "**Bank**") as a secured creditor, with a secured claim in the amount of $415,769. At this early stage, the Trustee understands that the Bank asserts a claim up to approximately $500,000 secured by substantially all of the Debtor's assets including causes of action, and the Trustee reserves all rights in connection therewith. The Trustee is conducting diligence and is in discussions with the Bank to determine the validity, extent and amount of its claims and whether, for example, the Bank would have a claim to proceeds of causes of actions and any other assets that the Trustee might recover.

6. As part of its schedules, the Debtor filed a list of more than 100 causes of action that the Debtor maintained against third parties with respect to accounts receivable that the Debtor believed are owed by its former accounting clients. The causes of action are at various stages of litigation. In addition to accounts receivable causes of action, the Debtor maintains other litigation and rights of action. Before the Petition Date, the Debtor was embroiled in litigation with several

of its former partners in a case styled, *RSSM CPA LLC v. Bell, et al.*, pending in the Supreme Court of the State of New York under Index No. 653533/2014. An Order was entered on January 6, 2017, and a Notice of Appeal was filed.

7. On March 16, 2016, the Debtor filed amended schedules and statement of financial affairs to identify *BC Compliance Group LLC v. Rosen Seymour Shapps Martin & Company LLP*, Docket No. L-2675-13, Superior Court of New Jersey, Monmouth County, on appeal before the Appellate Division of the Superior Court of New Jersey, Docket No. A-001107-15 [Docket Nos. 6 and 7]. The Debtor also added BCCG and identified it as a creditor holding a claim secured by an appeal bond.

8. On March 30, 2017, on request of the Trustee, the Clerk of the Bankruptcy Court filed the *Notice of Possible Payment of Dividends and of Last Date to File Claims*, setting July 5, 2017, as the deadline for creditors to file proofs of claim.

## RESPONSE AND OBJECTION

9. The Motion alleges, among other things, that on October 27, 2015, judgment was entered in the New Jersey Superior Court Clerk's Office in favor of BCCG with respect to services provided to the Debtor and the Debtor appealed two orders denying its pre-trial motions for summary judgment. The Debtor posted a pre-petition supersedeas bond in the amount of $227,798.

10. BCCG alleges that the legal issues on appeal were fully briefed and an oral argument was conducted before the Superior Court of New Jersey, Appellate Division, on January 24, 2017. BCCG further alleges that the Debtor filed its bankruptcy case "on the eve of the Appellate Division rendering its decision on the Debtor's appeal." BCCG does not assert why or how it knows that the Superior Court of New Jersey, Appellate Division was just about to issue its

decision.

11.     The Motion requests that this Court lift the automatic stay to permit BCCG to proceed with the BCCG Appeal and draw upon a supersedeas bond if the Appellate Division affirms the orders entered by the New Jersey Superior Court.

12.     The Trustee asserts that the relief sought in the Motion is inappropriate at this early stage of the Debtor's case, which includes significant collection actions, a dispute with a former partner, and with a secured creditor that might or might not have a secured claim on any or substantially all assets recovered by the Trustee. As set forth herein, the relief BCCG requests in the Motion should be denied at this time.

13.     BCCG filed the Motion less than a month after the Petition Date with a hearing currently scheduled fewer than 75 days after the Petition Date, and only a month after the initial section 341 meeting was held.

14.     As set forth below, the case law cited by BCCG does not support lifting the automatic stay at this very early stage of this chapter 7 case.

## THE MOTION SHOULD BE DENIED

15.     Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that:

(a)     a petition filed under section 301, 302, or 303 of this title … operates as a stay, applicable to all entities, of –

(1)     the commencement of continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

16.     The automatic stay affords a debtor fundamental protection under the Bankruptcy Code. *See, e.g., Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection*, 474 U.S. 494,

4

503 (1986) (the automatic stay is "one of the most fundamental debtor protections provided by the bankruptcy laws"). Further, the automatic stay is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *Securities and Exchange Commission v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000). *See also In re Ionosphere Clubs, Inc.*, 133 B.R. 5 (S.D.N.Y. 1991).

17. Section 362(d) of the Bankruptcy Code provides that a party may be entitled to relief from the automatic stay under certain circumstances:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

"For cause" is not defined in section 362(d)(1). It is generally determined on a case-by-case basis. *Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280 (2d Cir. 1990), is the seminal case in the Second Circuit with respect to whether relief from the automatic stay should be granted under section 362(d)(1). The *Sonnax* decision identifies several factors to be considered when deciding whether the automatic stay should be lifted, including the "impact of the stay on the parties and the balance of harms." *Sonnax*, 907 F.2d at 1286.

18. BCCG relies on *In re Keene Corp.*, 171 B.R. 180 (Bankr. S.D.N.Y. 1994) (Bernstein, J.), alleging that the factual circumstances of the cases are "identical" in that both cases involved a judgment creditor, with a debtor that posted a supersedeas bond to obtain a stay pending appeal and that briefing had been completed when the debtors filed their bankruptcy petitions.

19. While BCCG cites to several observations and conclusions in *Keene*, BCCG does not acknowledge or address several additional key distinctions between *Keene* and this chapter 7

5

case. In *Keene*, the Court did not lift the automatic stay within the first few months of the chapter 7 case; more than eight months elapsed before the stay was lifted. Further, in *Keene*, the Court explicitly stated that "[t]his Court is not prepared to hold that a judgment creditor will always make out a *prima facie* case of 'cause' merely by alleging that the debtor posted a supersedeas bond to stay the enforcement of his or her final judgement, although this will frequently be the case." *Keene*, 171 B.R. at 184.[1] In *Keene*, there was much more than just a decision on appeal with a bond posted. The judgment was based on a tort claim that resulted in the death of the movant's husband and the movant herself was a 78 year old woman, apparently key facts to the determination of the motion. The *Keene* decision does not hold that the bond was by itself sufficient to establish cause under *Sonnax*. Rather, the Court stated, "[t]hus the bond is her only means to receive full payment. This fact, coupled with her advanced age (she is 78), establishes 'harm' under *Sonnax*." *Keene*, 171 B.R. at 184.

20. In addition, in *Keene*, the Debtor itself in chapter 11 was still the litigant on appeal and the parties had not been able to resolve their disputes despite that the movant in *Keene* had settled with every other defendant. *See Keene,* 171 B.R. at 182.

21. Here, the Trustee has only recently been appointed and there has not been an opportunity to determine whether a settlement or other resolution of the BCCG Appeal can be reached without the necessity of a decision by the New Jersey Appellate Court. Nor has the Trustee achieved an understanding with the Bank as to what recovery actions, if any, the Trustee will undertake in light of the Bank's liens, if valid.

22. This Debtor was once a New York accounting firm with more than one hundred

---

[1] BCCG acknowledges in its footnote 3 to the Motion not all cases of a supersedeas bond and a case on appeal warrant the immediate lifting of the automatic stay.

professionals who have now scattered to other firms. There is copious, pre-petition litigation focused on various issues. The Trustee is communicating with the various parties. The Trustee has commenced an investigation into the facts and circumstances of the Debtor and this case. The Trustee is obtaining books and records.

23. Thus, the Trustee should be afforded the opportunity to undertake the administration of the Debtor's estate in an orderly fashion. The pre-petition surety bond is in place and BCCG has not alleged any further harm, but only a slight delay in pursuing the BCCG Appeal. The Trustee should be allowed the time necessary to obtain all relevant available information as to the Debtor's estate and thereby make orderly and rational decisions in the exercise of his fiduciary duty and business judgment.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court (i) deny the relief sought in the Motion, and (ii) grant him such other and further relief as this Court may deem just and proper.

Dated: New York, New York
April 28, 2017

DICONZA TRAURIG KADISH LLP

By:   s/Allen G. Kadish
       Allen G. Kadish
       Jeffrey M. Traurig
630 Third Avenue
New York, New York 10017
Tel:  (212) 682-4940
Email: akadish@dtklawgroup.com
       jtraurig@dtklawgroup.com

*Counsel for Robert L. Geltzer,
Chapter 7 Trustee*

c:\users\akadish\dropbox (dtk)\clio\geltzer, robert l\rssm\lift stay\objection to motion to lift stay of bc compliance v3.docx